UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LAW OFFICES OF EDWARD J. LAKE, P.C.<br>d/b/a THE LAKE LAW FIRM,<br><br>Debtor. | Chapter 7<br><br>Case No. 25-74584 (LAS) |

**LIMITED OBJECTIONS OF CREDITORS SYLVIA BENITO AND RICHARD SOLIT TO THE TRUSTEE'S MOTION TO APPROVE STIPULATION AND ORDER BY AND BETWEEN THE TRUSTEE AND BLAKEMORE INVESTMENTS LLC**

Sylvia Benito, a petitioning creditor in this case, and Richard Solit, a creditor and party in interest (the "Objecting Creditors"),[1] respectfully submit these limited objections (the "Objections") to the motion (ECF No. 137 (the "Motion")) of Kenneth P. Silverman, Esq., the chapter 7 trustee (the "Trustee") of the estate of Law Offices of Edward J. Lake, P.C. d/b/a The Lake Law Firm (the "Debtor"), seeking entry of an order pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving a proposed Stipulation and Order (the "Stipulation") between the Trustee and Blakemore Investments LLC ("Blakemore").

[1] Richard Solit holds Claim No. 22, filed March 10, 2026, in the amount of $6,575,483.39, asserted as unsecured on the basis of "Lawsuit re Tort Claims & Breach of Contract against Lake Law." LRS Law Group LLP, which is not an Objecting Creditor, holds Claim No. 21, filed the same day, in the amount of $2,325,483.39, asserted as secured on the basis of "Investment in Mass Tort Cases and Money Loaned." Both claims remain pending and unadjudicated. (ECF No. 133 ¶ 1.) LRS Law Group is the District of Columbia law firm that Solit and Lee Melchionni formed, with Solit as a limited partner and Melchionni as its legal managing partner, and through which Solit made his mass tort investment in the Debtor. (Claim No. 22, Attach. B ¶¶ 14-16.) Solit and LRS Law Group, together with ERC Partners, LLC, are plaintiffs in the same adversary proceeding, *Solit v. Lake*, Adv. Pro. No. 25-08122 (LAS) (Bankr. E.D.N.Y.). Each of Claim No. 21 and Claim No. 22 states that the claim "may be duplicative of a claim filed by another entity for the same amount," disclaims any double recovery, and provides that any recovery "shall be reduced to the extent of any recovery allowed and paid in connection with a duplicative claim." (Claim No. 21, Attach. A; Claim No. 22, Attach. A.) Neither Solit nor LRS Law Group seeks a double recovery, consistent with the reservations in each claim.

(*See* Involuntary Petition, ECF No. 1, at 3 (identifying Benito among the four petitioning creditors); Motion ¶¶ 1-2 (same, and describing the appointment of the Trustee).)

The Stipulation contemplates two steps. First, the funds presently held in the segregated escrow account maintained at U.S. Bank N.A., into which the Debtor was required to deposit all proceeds of the Employee Retention Tax Credit ("ERTC") claims that it prosecuted (the "Blakemore Escrow Account"), would be transferred to a segregated account of the Trustee established solely for such proceeds (the "ERTC Trustee Account"). Second, the Trustee would promptly disburse to Blakemore that portion of the transferred funds that was held in the Blakemore Escrow Account as of December 10, 2025, the date of the Trustee's appointment, and each dollar so disbursed would reduce, on a dollar-for-dollar basis, the secured portion of Blakemore's proof of claim, designated Claim No. 8 on the Debtor's claims register (the "Blakemore Claim"). (Stip. ¶¶ 1-2; Motion ¶¶ 2, 7-8, 12(a)-(b).)

The Objecting Creditors do not object to the first step; they do not oppose the transfer of the escrowed funds into an account titled in the name of, and held solely for the benefit of, the Debtor's estate pending a determination of the competing interests in those funds. They do object to the second step. A disbursement to Blakemore would reduce a claim the amount, validity, secured status, and priority of which may be contested, before any dispute has been adjudicated, and would do so from a fund in which the Objecting Creditors assert ownership interests. In support of these Objections, the Objecting Creditors respectfully state as follows:

## I. OBJECTIONS

### A. Property Interests in the Escrowed Funds Must Be Determined Before Any Disbursement

1. The Objecting Creditors' objection is directed at the second step, which rests upon an unproven premise, namely that the funds in the ERTC Trustee Account constitute Blakemore's

collateral and are available to satisfy Blakemore's asserted lien. A bankruptcy court must resolve competing claims to property before directing that the property be turned over because the statutory phrase "property of such estate" "presupposes an antecedent determination of property interests as a condition to the turnover of property." *Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.)*, 961 F.2d 341, 348 (2d Cir. 1992) (vacating and remanding because the courts below should have made a threshold determination whether the disputed funds were property of the insolvent estate once a plausible challenge was presented, and construing former 11 U.S.C. § 304(b)(2), *repealed by* Pub. L. No. 109-8, § 802(d)(3), 119 Stat. 23, 146 (2005)). Where "a plausible challenge is presented as to whether particular property falls within the statutory definition, the bankruptcy court whose authority is invoked must determine the legitimacy of that invocation," and "[t]he nature of this determination demands that it be made prior to the turnover of the property." *Id.* at 349. Bona fide questions of property ownership are "antecedent to the distributive rules of bankruptcy administration because they seek to determine whether an asset is actually part of the debtor's estate, rather than deciding the entitlement of certain creditors to pieces of that estate," and they are so "whether or not raised in a § 304(b)(2) turnover action." Such questions "thus precede distribution." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 426 (2d Cir. 2005). Because the ownership, validity, extent, and priority of the Blakemore Claim and its asserted lien are contested, and because the Objecting Creditors claim portions of the same funds as their own property, the proposed disbursement is premature.

2. On February 13, 2026, the Court entered an order authorizing the Trustee to operate the Debtor's business pursuant to section 721 of the Bankruptcy Code and to use cash collateral. (ECF No. 54 (the "Cash Collateral Order").) The Cash Collateral Order identifies the four

petitioning creditors, including Benito, as the "Titan Parties," and states that the Titan Parties and Blakemore (each an "Interested Party") "assert security interests, claims of ownership, or other rights or interests" in the Debtor's agreements with clients and other law firms, the recoveries under those agreements, the funds held in the Trustee's accounts (the "Claimed Cash"), and other assets of the estate. (Cash Collateral Order ¶¶ 1, 4.) It preserves those asserted interests "as is" as of November 26, 2025, the date on which the involuntary petition was filed (the "Petition Date"), "with the same order of priority and the same validity, force, and effect that such Interests had as of the Petition Date." (*Id.* ¶ 4.) It adjudicated no party's interest. It further provides that neither the Trustee nor any Interested Party "waived the right to challenge the nature, priority, extent, and/or validity of the liens or claims of any Interested Party against the Debtor" by reason of its entry. (*Id.* ¶ 19.) It directs that, "[n]otwithstanding anything herein or in any other order by this Court to the contrary, no Claimed Cash may be used to make any distribution to creditors, including any of the Interested Parties, in the Debtor's case except upon further order of this Court." (*Id.* ¶ 21.) It deems the Trustee's use of Claimed Cash allocated among the allowed Interests as 66.67% from the Interests of the Titan Parties and 33.33% from the Interests of Blakemore, "subject to (i) the allowance of any Interest, or (ii) further order of the Court." (*Id.* ¶ 17.)

3. To the extent the Stipulation would permit the balance of the ERTC Trustee Account to be released upon nothing more than "further agreement between the Trustee and Blakemore" (Stip. ¶ 3), it cannot be reconciled with paragraph 21 of the Cash Collateral Order. Any order approving the Stipulation should provide that no disbursement from the ERTC Trustee Account may be made absent further order of this Court entered after notice and an opportunity to be heard.

**B. The Competing Claims to the Escrowed Funds Are Unadjudicated**

4. The Objecting Creditors intend to file objections to the Blakemore Claim, together with a motion for leave to prosecute the objections to the extent leave is required. A filed claim "is deemed allowed, unless a party in interest . . . objects," 11 U.S.C. § 502(a), and the Objecting Creditors are parties in interest. The objections contend that the Blakemore Claim is not an allowed secured claim because Blakemore has established neither a valid lien on property nor the value of any collateral, *see* 11 U.S.C. § 506(a)(1); Fed. R. Bankr. P. 3012; Blakemore's $15,000,000 advance was equity rather than debt and should be recharacterized accordingly; and that the $11,750,000 penalty amount should be disallowed as an unenforceable penalty under New York law or, in the alternative, is subject to 11 U.S.C. § 726(a)(4). The objections further reserve the right to seek equitable subordination of the Blakemore Claim by adversary proceeding. *See* 11 U.S.C. § 510(c)(1); Fed. R. Bankr. P. 7001(h); Claim No. 8, Addendum ¶¶ 1-3, 6, 7 (asserting a $15,000,000 principal advance under the parties' capital provision agreement, $7,656,429.13 of interest accrued upon it, $1,083,165.09 of operations funding with $102,739.65 of interest, an $11,750,000 penalty amount, and $859,661.70 of legal fees, aggregating to asserted secured and unsecured components of $23,842,333.87 and $12,609,661.70). The Addendum to the Claim states the legal fee component as $859,661.70 in one paragraph and as $874,075.82 in another, and the asserted unsecured total is consistent only with the former. (*Id.* ¶¶ 6, 7(b).) If the objections are sustained, Blakemore would hold no allowed secured claim against the funds in the ERTC Trustee Account, and those funds would be available to the estate and creditors generally.

5. The Objecting Creditors assert ownership interests in the funds that the Stipulation would release. Each filed a proof of claim on March 10, 2026, stating that the claimant "has an ownership interest in the proceeds" of the "Mass Tort and/or Employee Retention Tax Credit cases

that Lake Law allocated or should have allocated to Claimant," and expressly including the claimant's rights to "any and all proceeds, recoveries, settlements, awards, judgment amounts, credits, refunds, or other compensation arising from or related to Mass Tort and ERTC cases, whether or not such cases are presently identified, allocated, or reflected in Lake Law's books and records." (Claim No. 22, Attach. A (the "Solit Claim"); Claim No. 23, Attach. A (the "Benito Claim" and, together with the Solit Claim, the "Ownership Claims").) In each claim, the ownership interest is asserted as the primary basis for recovery, and a claim for the amounts that the claimant transferred to the Debtor is pleaded only "[i]n the alternative." (Solit Claim, Attach. A; Benito Claim, Attach. A.)

6. The ERTC component of those asserted interests bears upon the funds the Stipulation would release. The Blakemore Escrow Account was established to hold the proceeds of the ERTC claims the Debtor prosecuted; the Escrow Agreement required the Debtor to deposit all proceeds from the ERTC Collateral into it. (Motion ¶ 7.) Those interests arise from the Debtor's ERTC investment model, which the Objecting Creditors plead as follows. An investor was assigned a specific business taxpayer holding an ERTC refund claim; the investor's money paid that taxpayer's legal fees and other costs associated with guiding the taxpayer through the refund application process; and, once the taxpayer obtained the refund, the investor received a portion of it as the return on investment. The investor did not fund litigation against the Internal Revenue Service. Unlike other firms in the ERTC space, which used a high-interest debt financing model, the Debtor permitted the investor to participate in the recovery by "selling" the investor a percentage of the recovered tax refund. Solit invested $4.25 million in ERTC claims with the Debtor through ERC Partners, LLC, an entity formed to serve as his investment vehicle, funding that investment between May and August 2022. Benito invested $1.5 million of her own funds

with the Debtor on April 26, 2022, to purchase ERTC claims for her own account, and alleges that she was thereby deprived of the resulting "ownership interests and potential profits." (Solit Claim, Attach. B ¶¶ 18, 20-21; Benito Claim, Attach. D ¶¶ 24, 26 & n.1.)

7. An asserted ownership interest of that character is not merely the claim of a general creditor. Property in which the debtor holds "only legal title and not an equitable interest" becomes property of the estate "only to the extent of the debtor's legal title," and not to the extent of any equitable interest that the debtor does not hold. 11 U.S.C. § 541(d). Funds that a debtor holds in escrow or in trust for another are therefore not property of the estate, and a lien upon such funds cannot support a secured claim, because the lien would attach to property in which the estate has no interest. *In re Dreier LLP*, 527 B.R. 126, 133-34 (S.D.N.Y. 2014) (holding that funds held in escrow by a law firm debtor were not property of its estate under 11 U.S.C. § 541, and that the escrow claimant was therefore not entitled to a secured claim under 11 U.S.C. § 506(a)(1) because any lien would be upon property in which the estate had no interest, and vacating and remanding for findings as to whether the funds were held in a segregated sub-account or were traceable within the estate). To the extent any of the escrowed proceeds are attributable to ERTC claims allocated to the Objecting Creditors, those proceeds may not constitute property of the Debtor's estate or Blakemore's collateral at all, and a disbursement would transfer funds the estate may not own. That question should be resolved before any disbursement is made. The Stipulation resolves the disposition of the escrowed funds as between the Trustee and Blakemore alone. Other parties may assert interests in the same funds, and the Court has not yet adjudicated those interests.

8. Benito asserts a secured claim in the alternative to her ownership interest. The Benito Claim asserts $260,520.55, consisting of a $200,000 loan and $60,520.55 of accrued interest, under a Short-Term Funding and Security Agreement dated January 17, 2024, between

the Debtor, as a borrower, and Benito and Lee Melchionni, as lenders, which granted the lenders a security interest in the Debtor's fee and revenue interests, co-counsel agreements, accounts, general intangibles, and proceeds, and which was perfected by a financing statement filed with the New York Department of State on January 25, 2024, Filing No. 202401250026163. (Benito Claim at 2 and Attach. A; *id.* Attach. B §§ 2(a), 4(a), (c); *id.* Attach. C.) That asserted lien has not been adjudicated either. (Cash Collateral Order ¶¶ 4, 17.)

**C. Rule 9019 Does Not Permit Approval of the Proposed Disbursement**

9. Approval of a settlement under Rule 9019 rests upon an "informed and independent judgment" that the proposed compromise is fair and equitable. As the Supreme Court has explained, there can be no such judgment "until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated," and courts in this Circuit assess that question against the interrelated factors drawn from *TMT Trailer Ferry*. *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 & n.15 (2d Cir. 2007) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)); *accord* Motion ¶ 14 (invoking the same standard). Ownership of the escrowed funds and the validity, extent, and priority of the Blakemore Claim remain undetermined, and each bears on that assessment.

10. The first of these factors is the balance between the litigation's possibility of success and the settlement's present and future benefits. *Iridium*, 478 F.3d at 462. That balance is difficult to strike here because the Stipulation compromises little. It releases no claim and dismisses no proceeding. It preserves all of Blakemore's rights under the Blakemore Agreements and the Cash Collateral Order (Stip. ¶ 4), and it preserves the rights of every party in interest with respect to the

Blakemore Claim (Stip. ¶ 5). The amount, validity, secured status, and priority of that claim remain undisturbed.

11. Approval of the proposed disbursement would effectively resolve contested questions about Blakemore's Claim in Blakemore's favor without adjudication. The Stipulation reduces the secured portion of the Blakemore Claim on a dollar-for-dollar basis as funds are released (Stip. ¶ 2), which presupposes the existence, validity, and priority of the lien that the Objecting Creditors' objections contest. Reducing the secured portion of a contested claim is relief upon the merits of that claim, granted before the merits have been reached.

12. The Second Circuit authority upon which the Trustee relies confirms this conclusion. In *Iridium*, the court declined to extend *In re SPM Manufacturing Corp.* so as to permit secured lenders to direct the distribution of cash on hand, because *SPM* addressed a lender holding a "conclusively determined and uncontested 'perfected, first security interest'" in all of a debtor's assets, whereas the *Iridium* lenders' "liens were contested and the money held by the Lenders was an asset of the Estate," such that "[b]ankruptcy Rule 9019 provide[d] the appropriate scale on which to weigh the settlement." *Iridium*, 478 F.3d at 460-61 (distinguishing *Official, Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305 (1st Cir. 1993)). So too here. Blakemore's lien has not been conclusively determined and may be contested. The funds in the ERTC Trustee Account therefore should be measured against the standard Rule 9019 prescribes, not treated as collateral Blakemore is entitled to receive.

13. Among the factors that the Second Circuit directs courts to consider are the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty of collecting upon a judgment, and "the paramount interests of the creditors." *Iridium*, 478 F.3d at 462. If the funds are disbursed to Blakemore and the Blakemore

Claim is thereafter recharacterized, disallowed, or subordinated, or the ownership interests asserted in the Ownership Claims are sustained, the estate would be left to pursue recovery of money already distributed to a claimant that should have received nothing, or should have received it only after other creditors. Retaining the funds in an account of the estate until those questions are resolved eliminates that risk without prejudice to any party because creditors "have valid claims only against the estate's bona fide assets." *Koreag*, 961 F.2d at 349.

14. The Trustee explains that he did not object to the Blakemore Claim by his own deadline and prefers to avoid protracted litigation so that he may focus upon the operation of the Debtor's business. (Motion ¶¶ 9, 17.) The Trustee's decision not to object does not, however, dispose of an objection asserted by other parties in interest. *See* 11 U.S.C. § 502(a); Cash Collateral Order ¶¶ 14, 19 (directing the Trustee to investigate and to object to asserted interests, and preserving the right of the Trustee and each Interested Party to challenge the validity of any Interested Party's liens or claims). The Second Circuit has held that whether a settlement's distribution scheme complies with the priority scheme of the Bankruptcy Code "must be the most important factor" in the Rule 9019 inquiry, and that the court "must be certain that parties to a settlement have not employed a settlement as a means to avoid the priority strictures of the Bankruptcy Code." *Iridium*, 478 F.3d at 464. The Stipulation preserves the rights of any party in interest with respect to the Blakemore Claim (Stip. ¶ 5), but those reserved rights are of little consequence if the disputed funds are treated as Blakemore's collateral and applied to its claim before those rights can be heard. Once the funds are held in an account of the estate but not distributed, they are preserved, the Trustee may continue to operate the Debtor's business, and no prejudice results from determining ownership before distribution.

15. In a chapter 7 case, property of the estate is distributed under section 726(a), which provides that, "[e]xcept as provided in section 510," distribution is made first to claims entitled to priority under section 507, second to allowed unsecured claims, and fourth to any allowed claim, "whether secured or unsecured, for any fine, penalty, or forfeiture," to the extent it is "not compensation for actual pecuniary loss suffered by the holder of such claim." 11 U.S.C. § 726(a)(1)-(4). Payments within each tier are made "pro rata among claims of the kind specified in each such particular paragraph." *Id.* § 726(b). Property in which an entity other than the estate holds an interest, "such as a lien," is disposed of under section 725, and then only "after notice and a hearing." *Id.* § 725. By its terms, section 725 does not supply authority to deliver estate funds to a claimant whose asserted lien has not been established. If the allegedly secured portion of the Blakemore Claim fails, the disbursement the Stipulation authorizes would be a payment upon an unsecured claim made ahead of, and to the exclusion of, every other unsecured creditor. A disbursement made now could therefore satisfy, in whole or in part, in advance a claim that the Bankruptcy Code ranks behind the claims of the creditors who object to it.

16. The determination the Stipulation would make is one the Rules commit to an adversary proceeding. Bankruptcy Rule 7001(b) provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding, subject only to proceedings under Rules 3012 and 4003(d). Fed. R. Bankr. P. 7001(b). A motion under Rule 9019 is not among the exceptions. Rule 7001(a) excepts a proceeding under section 725 from the adversary-proceeding requirement governing the recovery of money or property, while Rule 7001(b) contains no comparable exception for the determination of a lien. *Id.* 7001(a). Disbursing the escrowed funds to Blakemore and crediting the payment against the secured portion

of its claim (Stip. ¶¶ 1-2) would treat its asserted lien as valid, first in priority, and extending to these funds, which is the determination Rule 7001(b) reserves to an adversary proceeding.

### D. The Objecting Creditors Oppose Only the Disbursement

17. Accordingly, the Objecting Creditors do not object to the Motion insofar as it seeks authority to transfer the funds in the Blakemore Escrow Account into the ERTC Trustee Account, provided that the ERTC Trustee Account is titled in the name of, and held solely for the benefit of, the Debtor's estate. The Objecting Creditors object to the Motion insofar as it seeks authority to disburse any of those funds to Blakemore, and to paragraph 2 of the Stipulation insofar as it would reduce the secured portion of the Blakemore Claim, pending resolution of the objections to the Blakemore Claim and of the interests asserted in the Ownership Claims.

## II. RESERVATION OF RIGHTS

18. The Objecting Creditors reserve all rights, including the right to be heard at the hearing upon the Motion, to supplement or amend these Objections, and to pursue all objections and relief with respect to the Blakemore Claim, any asserted Blakemore lien, and the agreements underlying them.

## III. NOTICE

Notice of these Objections has been given to: (i) the Trustee and his counsel; (ii) the Office of the United States Trustee; (iii) Blakemore, through its counsel of record; (iv) the Debtor; and (v) all parties that have requested notice pursuant to Bankruptcy Rule 2002. The Objecting Creditors submit that, in light of the nature of this Objection, no other or further notice is required.

## IV. CONCLUSION

**WHEREFORE** the Objecting Creditors respectfully request that the Court (i) grant the Motion only to the extent it authorizes the transfer of the funds in the Blakemore Escrow Account

into the ERTC Trustee Account, and direct that the ERTC Trustee Account be titled in the name of, and held solely for the benefit of, the Debtor's estate; (ii) deny the Motion to the extent it authorizes any disbursement of those funds to Blakemore and any corresponding reduction of the secured portion of the Blakemore Claim, pending resolution of the objections to the Blakemore Claim and of the interests asserted in the Ownership Claims; (iii) provide that no disbursement from the ERTC Trustee Account may be made absent further order of this Court entered after notice and an opportunity to be heard; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: August 13, 2026
New York, New York

Respectfully submitted,

*/s/ Michael J. Collins*

William A. Brewer III
Michael J. Collins
Nicholas J. Wilson
**BREWER, ATTORNEYS AND COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849
wab@brewerattorneys.com
mjc@brewerattorneys.com
njw@brewerattorneys.com
*Counsel for Sylvia Benito and Richard Solit*

# CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2026, a true and correct copy of the foregoing Objection was served (i) electronically, via the Court's CM/ECF system, upon all parties receiving electronic notice in this case, and (ii) by first-class mail, postage prepaid, upon

Blakemore Investments LLC
c/o Togut, Segal & Segal LLP
One Pennsylvania Plaza, Suite 3335
New York, New York 10119
Attn: Frank A. Oswald, Esq. and John C. Gallego, Esq.

Garfunkel Wild, P.C.
900 Stewart Avenue
Garden City, New York 11530
Attn: Burton S. Weston, Esq.

Rimon P.C.
Counsel to Kenneth P. Silverman, Esq.
The Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, NY 11753
Attn: Brian Powers, Esq.

Office of the United States Trustee
560 Federal Plaza
Central Islip, New York 11722
Attn: Christine H. Black, Esq.

*/s/ Nicholas J. Wilson*
Nicholas J. Wilson