UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
In re:

LAW OFFICES OF EDWARD J. LAKE, P.C. d/b/a THE LAKE LAW FIRM,

Debtor.
---------------------------------------------------------- X

Chapter 7

Case No. 25-74584 (LAS)

**MEMORANDUM ORDER HOLDING BRENES LAW GROUP, P.C. IN CIVIL CONTEMPT FOR NONCOMPLIANCE WITH SUBPOENA ISSUED PURSUANT TO A BANKRUPTCY RULE 2004 ORDER, IMPOSING SANCTIONS, AND AWARDING ATTORNEYS' FEES AND COSTS**

Before the Court is the motion dated September 22, 2026 (the "Motion") [ECF No. 159], of Kenneth P. Silverman, Esq., the chapter 7 trustee (the "Trustee") of the bankruptcy estate of the Law Offices of Edward J. Lake, P.C. d/b/a the Lake Law Firm (the "Debtor"), and the Declaration of Meghan Lavine, Esq. in support of the Motion, seeking the entry of an Order, pursuant to 11 U.S.C. § 105 and Rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) finding that Brenes Law Group, P.C. ("Brenes") is not in compliance with the subpoena ("Subpoena") issued pursuant to the Rule 2004 Order dated April 29, 2026 (the "Rule 2004 Order") [ECF No. 87], (b) directing Brenes' compliance with the Subpoena, and (c) granting related relief, including, upon Brenes' continued noncompliance, a finding of civil contempt, the imposition of sanctions, and an award of the Trustee's costs and expenses, including attorneys' fees. No opposition to the Motion was filed.

**A. Background and Procedural History**

The Debtor is a "feeder firm" in the mass-tort-claims arena that does not litigate clients' claims but, instead, enters into agreements ("Agreements") with both firm clients (collectively, the "Clients") and other firms as co-counsel ("Co-Counsel") to handle the Clients' litigations with each firm entitled to a share of the recoveries ("Recoveries"). The Debtor has over 3,000 active clients and is Co-Counsel with a few dozen prosecuting law firms.

An involuntary chapter 7 petition was filed against the Debtor on November 26, 2025. An Order for Relief under Chapter 7 [ECF No. 17] was entered on December 10, 2025 and Kenneth P. Silverman, Esq. was appointed as Trustee [ECF No. 18]. Pursuant to the Court's Order dated December 12, 2025 [ECF No. 19], the Trustee was authorized to operate the Debtor's business pursuant to 11 U.S.C. § 721, which authority has been extended pursuant to Orders dated February 13, 2026 [ECF No. 54], July 27, 2026 [ECF No. 130], and August 21, 2026 [ECF No. 152].

To aid in the investigation of the Debtor's financial affairs, including but not limited to, the Agreements and the Recoveries, the Trustee reached out to various Co-Counsel and requested updates as to the status of the pending litigations and, importantly, the timeline on which Co-Counsel believes the Recoveries will be realized for the benefit of the Debtor's estate and creditors. Facing resistance and, in some cases, a lack of response, from certain Co-Counsel, on April 24, 2026, the Trustee filed an application [ECF No. 86] pursuant to Bankruptcy Rules 2004 and 9016 seeking authority for the issuance and service of subpoenas duces tecum and/or subpoenas ad testificandum, for the production of documents from, and/or examination of, Co-Counsel.

On April 29, 2026, the Court entered the Rule 2004 Order [ECF No. 87] authorizing the Trustee to issue subpoenas for the production of documents from, and/or examination of, the individuals and entities set forth in the Rule 2004 Order including, but not limited to, Brenes.

On May 20, 2026, counsel to the Trustee served a subpoena upon Brenes pursuant to the Rule 2004 Order (the "Subpoena"), and proof of service was filed on the Court's docket [ECF No. 95]. On June 3, 2026, Brenes filed its *Objections and Responses By Brenes Law Group, P.C. to Subpoena Served by Chapter 7 Trustee on May 20, 2026* ("Objections and Responses") [ECF No. 101], requesting an extension of time and the entry of a confidentiality

order prior to producing settlement-related information. On June 5, 2026, the Trustee consented to extend Brenes' time to respond through June 21, 2026, and agreed to significantly narrow the scope of the document requests. On July 21, 2026, the Court so-ordered a negotiated Stipulation and Protective Order [ECF No. 126], which resolved Brenes' principal confidentiality objections.

On July 17, 2026, the Court entered an Order scheduling a hearing on Brenes' Objection and Responses ("Scheduling Order") [ECF No. 122] for July 23, 2026. The Trustee served a copy of the Scheduling order on Brenes on July 17, 2026 [ECF No. 123]. The Court also served Brenes with a copy of the Scheduling Order on July 19, 2026 [ECF No. 124]. On July 22, 2026, the Court adjourned the hearing to August 25, 2026.

On July 31, 2026, Brenes made a partial production of documents that, according to the Trustee, omitted, in whole or in part, several agreed-upon categories of documents, including meaningful client status information for the majority of identified cases, including, settlement documents, filed complaints, and an accounting of complete records concerning fees and trust holds. On August 5, 2026, by letter, the Trustee detailed the deficiencies in Brenes' production and afforded Brenes a further opportunity to cure by August 12, 2026 (the "Deficiency Letter"). Brenes failed to respond to the Deficiency Letter or cure the deficiencies. On August 14, 2026, counsel to the Trustee re-sent the Deficiency Letter to Brenes, advising Brenes that no additional documents or response had been received, and again Brenes failed to respond.

On August 25, 2026, the Court held the rescheduled hearing on Brenes' Objection and Responses. The Trustee and his counsel appeared and there was no appearance by Brenes. At the hearing, the Trustee informed the Court of Brenes' noncompliance with the Rule 2004 Order and Subpoena and the Trustee's intention to move to compel compliance. On August 31, 2026, counsel to the Trustee sent an email to Brenes, again attaching the Deficiency Letter and

requesting that Brenes advise when it would produce the outstanding documents (the "August 31 Email"). Brenes did not respond to the August 31 Email.

On September 22, 2026, the Trustee filed the Motion [ECF No. 159], and no opposition to the Motion was filed by Brenes. The Court held a hearing on the Motion on October 6, 2026 ("October 6 Hearing"), at which the Trustee and his counsel appeared and Brenes failed to appear. Based upon all the proceedings before the Court and the record made at the October 6 Hearing, the Court entered an Order dated October 13, 2026 [ECF No. 172] (the "Initial Order"), which was amended by an Amended Order dated October 13, 2026[1] [ECF No. 173] (the "Amended Order," and together with the Initial Order, the "Orders to Compel"), directing Brenes to comply with the Rule 2004 Order and Subpoena within ten (10) days ("Compliance Deadline") and scheduling a hearing for November 5, 2026 at 11:00 a.m., to determine whether Brenes should be held in civil contempt. On October 13, 2026, the Trustee served the Amended Order upon Brenes by email, as required by the Amended Order, and filed proof of such service [ECF No. 174].

Brenes failed to produce the outstanding documents identified in the Deficiency Letter by the Compliance Deadline. On November 2, 2026, the Trustee filed an affirmation of Brenes' noncompliance (the "Affirmation of Noncompliance") [ECF No. 177].

The Court held a hearing on November 5, 2026 (the "Contempt Hearing"), at which the Trustee and his counsel appeared and again Brenes failed to appear.

**B. Discussion**

"Bankruptcy Courts have the inherent power to enforce compliance with their lawful orders through civil contempt." *Richmond Hospitality LLC v. Toth (In re Richmond Hospitality)*, Case No.: 22-40507, Adv. Pro. No.: 23-01096, 2026 WL 2394227, at *14 (Bankr. E.D.N.Y. Aug. 17, 2026) (citing *Worms v. Rozhkov (In re Markus)*, 78 F.4th 554, 564 (2d Cir.

---

[1] The Amended Order amended the Initial Order solely to change the hearing date from November 3, 2026 to November 5, 2026.

2023)). The courts' power is "governed not by rule or statute," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quotations omitted); see also *Link v. Wabash R. Co.*. 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962), but rather "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers*, U.S. at 43 (quotations omitted); see also *Anderson v. Dunn*, 6 Wheat. 204, 277, 5 L.Ed. 242 (1821).

> [I]t is firmly established that the power to punish for contempts is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines, for the underlying concern that gave rise to the contempt power was not … merely the disruption of court proceedings. Rather it was the disobedience of the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.

*Chambers*, 501 U.S. at 44 (internal quotations and citations omitted).

"A civil contempt sanction should either seek to 'coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance.'" *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995) (quoting *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989)). "A contempt order is warranted only where the moving party establishes by clear and convincing evidence that … (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Id.*, 65 F.3d at 1058 (internal citations omitted).

In addition, "a court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.'" *Chambers*, 501 U.S. at 45 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)). And, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously,

wantonly, or for oppressive reasons.'" *Id.*, 501 U.S. at 45-46 (quoting *Alyeska*, 421 U.S. at 258-259, 95 S.Ct. at 1622-1723.).

**C. Brenes' Failure to Comply**

Based upon all the proceedings before the Court, and the record made at the October 6 Hearing and the Contempt Hearing, the Court finds Brenes to be in contempt of this Court's Orders by clear and convincing evidence.

The Rule 2004 Order, the Subpoena served pursuant thereto, and the Orders to Compel are clear and unambiguous on their face as to Brenes and its obligations thereunder. Brenes received notice of the Rule 2004 Order and Subpoena as it filed Objections and Responses to Subpoena [ECF No. 101], requesting an extension of time and the entry of a confidentiality order prior to producing settlement-related information. The Trustee consented to extend Brenes' time to respond through June 21, 2026, and agreed to significantly narrow the scope of the document requests. On July 21, 2026, the Court so-ordered a negotiated Stipulation and Protective Order [ECF No. 126], which resolved Brenes' principal confidentiality objections.

Brenes did not file a motion to quash the Subpoena, or otherwise move for a further protective order. On July 31, 2026, Brenes made a partial production of documents that omitted, in whole or in part, several agreed-upon categories of documents, including meaningful client status information for the majority of identified cases, including, settlement documents, filed complaints, and an accounting of complete records concerning fees and trust holds. There is no dispute that Brenes failed to produce to the Trustee all materials demanded in the Subpoena, as narrowed. Pursuant to the August 12, 2026 Deficiency Letter, the Trustee detailed the deficiencies and afforded Brenes an opportunity to cure, but Brenes failed to respond to the Deficiency Letter and again failed to respond when the Deficiency Letter was resent to it by the Trustee.

There is no dispute that Brenes had actual notice of the Rule 2004 Order, the Subpoena, the Court's Scheduling Order on Brenes Objection and Responses, this Motion, the Orders to Compel, the October 6 Hearing, and the Contempt Hearing. Yet, after Brenes' limited production on July 31, 2026, Brenes ceased all communications with the Trustee, ceased making any filings with this Court and failed to appear at scheduled hearings before this Court. Brenes has not filed a response to the Motion, failed to file any motion to quash the Subpoena and Orders to Compel, and failed to appear at the August 25, 2026 hearing on its Objection and Responses, the October 6 Hearing or the Contempt Hearing, notwithstanding notice of the various Orders, the Motion and the hearings.

The Court finds proof of Brenes' noncompliance to be clear and convincing, and that Brenes has not diligently attempted to comply in any reasonable manner, despite being afforded multiple opportunities to cure the deficiencies in its production by August 12, 2026, and numerous subsequent opportunities to comply thereafter. Based upon the record of the October 6 Hearing, the Contempt Hearing, and all prior proceedings herein, the Court grants the Trustee's Motion to hold Brenes in civil contempt and to impose coercive sanctions due to Brenes' failure to comply with Orders of this Court.

Accordingly, it is hereby

**ORDERED**, that the Motion is granted to the extent set forth herein; and it is further

**ORDERED**, that Brenes is held in civil contempt of this Court for its willful failure to comply with the Subpoena, the Rule 2004 Order, and the Orders to Compel; and it is further

**ORDERED**, that Brenes can purge the civil contempt by fully and completely complying with the Subpoena, which shall mean the production to the Trustee of all documents identified as outstanding in the Deficiency Letter ("Full Compliance"), as transmitted to Brenes with the August 31 Email, which was the last deficiency communication sent by the Trustee to

Brenes, within five (5) business days from the date of service of this Order (the "Grace Period"); and it is further

**ORDERED**, that in the event Brenes fails to purge the civil contempt within the Grace Period as set forth in the preceding paragraph, then as a coercive sanction for its civil contempt, Brenes shall pay to the Trustee, for the benefit of the Debtor's estate, the sum of $1,000.00 per day starting the first calendar day after the Grace Period, through and including the date on which Brenes achieves Full Compliance with the Subpoena; and it is further

**ORDERED**, that if Brenes remains in civil contempt after the Grace Period has lapsed, then Brenes may purge its civil contempt and stop the further accrual of sanctions only by achieving Full Compliance with the Subpoena; and it is further

**ORDERED**, that the Trustee and/or counsel for the Trustee shall file with the Court, and email Brenes, an affirmation of Brenes' Full Compliance no later than three (3) business days after such compliance, setting forth the date of achieving Full Compliance and the total amount of sanctions accrued under this Order; and it is further

**ORDERED**, that Brenes shall pay all accrued sanctions to the Trustee within ten (10) calendar days after the receipt of such affirmation, failing which the Trustee may submit a proposed judgment against Brenes for the unpaid amount; provided, however, that if Brenes has not achieved Full Compliance within thirty (30) calendar days after the Trustee's service of this Order upon Brenes, the Trustee may file an affirmation setting forth the sanctions accrued through the date of such affirmation and submit a proposed judgment against Brenes for that amount, without prejudice to the continued accrual of sanctions and the Trustee's right to seek further relief; and it is further

**ORDERED**, that the Trustee is also awarded reasonable attorneys' fees and costs incurred in moving to compel compliance by Brenes with the lawful Orders of this Court, and with respect to the Trustee and his counsel's appearances at the October 6 Hearing and the

Contempt Hearing, without prejudice to the Trustee's right to make one or more additional applications for attorneys' fees and costs incurred in connection with the foregoing, the enforcement of this Order, or any continued noncompliance by Brenes; and it is further

**ORDERED**, that no later than thirty (30) calendar days after the service of this Order upon Brenes, the Trustee shall file and serve upon Brenes a declaration or affirmation of counsel, together with contemporaneous time records and an itemization of costs, in support of the attorneys' fees and costs awarded herein; and it is further

**ORDERED**, that Brenes may file and serve any objection to the reasonableness of the amounts sought no later than seven (7) calendar days after service of the Trustee's submission with respect to the attorney's fees and costs incurred; and, if no timely objection is filed, the Court may fix the amount of the award and enter an order or judgment without further hearing; and it is further

**ORDERED**, that Brenes shall pay the attorneys' fees and costs fixed by the Court to the Trustee within seven (7) calendar days after entry of the order fixing such amount, and the fixing and payment of such amount shall be without prejudice to the Trustee's right to make additional applications for attorneys' fees and costs; and it is further

**ORDERED**, that the Trustee shall serve a copy of this Order by email and overnight mail upon Brenes no later than two (2) business days after the entry of this Order, and shall file proof of such service; and it is further

**ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and enforcement of this Order.

**Dated: November 10, 2026**
**Central Islip, New York**

Louis A. Scarcella
United States Bankruptcy Judge